HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CORRIE ANNE PEARSON,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL DAVIS, individually, with his marital community, and as Police Officer for the City of Bremerton, Washington; RICH CRONK, individually, with his marital community, and as Police Officer for the City of Bremerton, Washington; CITY OF BREMERTON, a municipal corporation; R.J. SCHIERHOFF, individually, with his marital community, and as Police Officer for the Washington State Patrol; and the STATE OF WASHINGTON,<br><br>Defendants. | Case No.  C06-5444RBL<br><br><br><br>ORDER ON SUMMARY JUDGMENT MOTIONS |

THIS MATTER is before the Court on Defendants Schierhoff and the State of Washington's Motion for Summary Judgment [Dkt. #30] and Defendants Davis, Cronk and the City of Bremerton's Motion for Summary Judgment [Dkt. #32]. The Court has considered the moving papers, responses and replies together with the entirety of the record and files herein and for the reasons stated hereby **GRANTS** Schierhoff and the State's Motion and **GRANTS** in part and **DENIES** in part Davis, Cronk and the City of Bremerton's motion.

ORDER
Page - 1

## I.  FACTUAL BACKGROUND

On or about August 3, 2003 at approximately 1:30 in the morning Washington State Patrol ("WSP") Sgt. Schierhoff observed Ms. Pearson driving her vehicle in a manner that caused Sgt. Schierhoff to believe the driver was under the influence of alcohol.  Sgt. Schierhoff activated his emergency lights; however, Ms. Pearson did not stop immediately and continued driving through Bremerton, coming to a stop in front of a friend's residence.[1]  Sgt. Schierhoff approached the vehicle, and after detecting the odor of intoxicants and conducting field sobriety tests, arrested Ms. Pearson for DUI.[2]  She was handcuffed behind her back and placed in the back seat of Sgt. Shierhoff's vehicle.  This particular WSP vehicle was not equipped with a divider between the front and rear seats and it had operable inside rear door handles.

While Sgt. Schierhoff and Ms. Pearson were in his vehicle, he noticed people on the porch of the house they were parked in front of, and when the onlookers began approaching his position, he directed them several times to return to the house.  They returned to the porch.  Ms. Pearson informed the Sargent that her friend lived in the house, and rather than impounding her vehicle, Sgt. Schierhoff determined that it was appropriate to give Ms. Pearson's car keys to her friend.  Sgt. Schierhoff left Ms. Pearson handcuffed in the back seat of his vehicle and traveled the 20-30 feet to the house to leave the keys with the occupant of the home.  As he was handing over the keys, he heard a noise, looked back towards his vehicle and noticed that Ms. Pearson was no longer there.  He ran back to his car, looked up and down the road and did not see her.

Because it was dark, therefore making it difficult to find a fleeing prisoner, Sgt. Schierhoff radioed the Bremerton Police Department for a K-9 unit to be dispatched to his location to search for Ms. Pearson. Bremerton K-9 Officer Davis and Sgt. Cronk arrived in separate vehicles shortly thereafter.  Officer Davis and Sgt. Cronk discussed the situation with Sgt. Schierhoff and decided to try to locate Ms. Pearson using Officer Davis' certified police dog, KG.  KG is trained to "bite and hold" when he comes into contact with the person he is commanded to locate.  Officer Davis placed a harness on KG and attached a 20-foot line

---

[1] The parties dispute whether the distance traveled from the time Sgt. Schierhoff activated his emergency lights until Ms. Pearson finally stopped was as great as two miles or as little as 500 yards; however, this was not a high-speed chase.  (WSP Report of Investigation, Decl. of Rene D. Tomisser, Exh. B, Dkt. #31).

[2] Ms. Pearson later pled guilty to DUI.  (Decl. of Mark E. Koontz, Exh. I, Dkt. #34).

to it, placed him in the back of Sgt. Schierhoff's car to gather Ms. Pearson's scent, and then began tracking.

The account of what happened next comes only from Officer Davis and Sgt. Cronk because when Ms. Pearson drinks, she "blacks out." In this instance she remembers virtually nothing from the time Sgt. Schierhoff left her in his car to waking up in the hospital. (Koontz Decl., Exh. A, Deposition of Corrie Anne Pearson, pp. 30-31, Dkt. #34).

When Officer Davis and KG began tracking Ms. Pearson, KG quickly picked up a scent. When Officer Davis realized this, he announced that a Bremerton Police K-9 was in the area and that anyone in the area should make their whereabouts known or they may be bitten. (Koontz Decl., Exh. D,Deposition of Michael Davis, p. 15). They continued tracking and KG alerted near a bush by a house. The dog reared back his head, snapped it back and pulled Officer Davis forward. (*Id*., at p. 16). He then very quickly went back down into the bush and Officer Davis heard somebody screaming "get the f**k off me." Officer Davis saw legs kicking at KG's head. (*Id.*) The dog began pulling, and Officer Davis maneuvered so he could get a better angle to see what was occurring. (*Id.*) Officer Davis then ordered Ms. Pearson to exit the bush so he could see her hands and feet. Once she did he "outed" or commanded the dog to release Ms. Pearson and return to him. (*Id.*, at pp. 17-18). From the time he first heard her scream until he outed the dog, approximately five seconds elapsed. (*Id*., at p. 18).

Sgt. Cronk was following about 5-10 feet behind Officer Davis. (Sampson Decl., Exh. G, Deposition of Richard Cronk, p. 10, Dkt. #39). They were both carrying flashlights. He heard the scream and saw the kicking. (*Id*., at pp. 12-13). He yelled at Ms. Pearson to show him her hands and went down to pick her up. She told Sgt. Cronk: "Don't' f**king touch me." He grabbed her arm, dragged her out of the bushes and returned her to Sgt. Schierhoff's vehicle. (*Id.*, at pp. 13-15). Ms. Pearson vaguely remembers being picked up, but she claims she was picked up by the handcuffs. She also claims that she kept falling down because her leg hurt. (Koontz Decl., Exh. A, Deposition of Corrie Anne Pearson, p. 91, Dkt. #34).

Sgt. Schierhoff heard the screaming, so he and Trooper Harter, who had by this time arrived to back up Sgt. Schierhoff, ran to the area where they were picking her up. (Tomisser Decl., Exh. A, Deposition of R. J. Schierhoff, pp. 19-21, Dkt. #31). He observed Ms. Pearson being picked up by the

arms, still in handcuffs. (*Id.*) While Ms. Pearson was being walked back to Sgt. Schierhoff's vehicle, the officers saw blood on her leg and called for the paramedics. Sgt. Cronk bandaged her wound in the back of Sgt. Schierhoff's car, but during this treatment, she continued kicking and using profanities. (Sampson Decl., Exh. G, Deposition of Richard Cronk, pp. 15-16, Dtk. #39). Ms. Pearson was also combative with the paramedics and at the hospital; so much so that she had to be physically restrained and tied to the gurney. (Tomisser Decl., Exh. A, Deposition of R .J. Schierhoff, p. 21; Exh. B, WSP Report of Investigation, Dkt. #31).

On June 29, 2006 Ms. Pearson filed a complaint in Kitsap County Superior Court. She alleged five causes of action: 1) negligence under Washington state law against the State of Washington and Sgt. Schierhoff; 2) negligence under Washington state law against Officer Davis and Sgt. Cronk; 3) negligence under Washington state law against the City of Bremerton; 4) the tort of outrage under Washington state law against Officer Davis, Sgt. Cronk and the City of Bremerton,[3] and; 5) 42 U.S.C. §1983 claim against Officer Davis, Sgt. Cronk and the City of Bremerton. The defendants thereafter removed the case to this Court. (Dkt. #1).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## III. DISCUSSION

---

[3] Plaintiff concedes that her claim for outrage must be dismissed. (Memo. Opp. City's SJ Motion, p. 2, Dkt. #38). .

**A.    State of Washington and Sgt. Schierhoff's Motion for Summary Judgment.**

The State and Sgt. Schierhoff move for summary judgment arguing that Ms. Pearson's claim that they were negligent in allowing her to escape is barred by the one-year statute of limitations provided for in RCW 4.16.110. The statute provides:

> Within one year an action shall be brought against a sheriff, or other officer for the escape of a prisoner arrested or imprisoned on civil process.

In *Burns v. City of Seattle*, _____ Wn.2d _____, 164 P.3d 475 (2007), the Washington Supreme Court reiterated the rule of statutory construction that "[w]hen the meaning of a statute is plain, we give effect to that plan meaning as an expression of legislative intent." *Burns*, 164 P.3d at 481. In order to discern the plain meaning, the Court may look to "related statutory provisions, and the statutory scheme as a whole." *Id*.

Here, the meaning of RCW 4.16.110 is plain, not easily discerned, but it appears to apply to Ms. Pearson's situation. She was a "prisoner" who had been "arrested" and she did "escape." Moreover, looking to the statutory scheme provided in RCW 4.16 et. seq. which sets forth various statutes of limitations, this reading of RCW 4.16.110 becomes clearer. RCW 4.16.080 is Washington's general three-year statute of limitations. RCW 4.16.080(5) provides a three-year statute of limitations for actions against peace officers; however, actions for escape are specifically exempted from coverage under that subsection.

Ms. Pearson argues that the one-year statute of limitations only applies when someone escapes from being held on civil process. The statute plainly contains the disjunctive "or" between "prisoner arrested" and "imprisoned on civil process." The State's reading of the statute is correct and Ms. Pearson's claims against the State and Sgt. Schierhoff are barred by the one-year statute of limitations contained in RCW 4.16.110. Their motion for summary judgment is **GRANTED**.

**B.    Defendants Davis, Cronk and City of Bremerton's Motion for Summary Judgment.**

Officer Davis, Sgt. Cronk and the City of Bremerton ("City defendants") seek summary judgment on plaintiff's negligence claim and 42 U.S.C. §1983 claim against them.

**1.    Negligence Claim**.

Ms. Pearson claims that the City defendants "owed a duty of care to plaintiff, an incapacitated, handcuffed woman, to refrain from using more force than was necessary to effect her arrest and custody[]", that they "breached the standard of care for law enforcement officers," and that the breach

"direct[ly] and proximate[ly] cause[d]" her injuries. (Complaint, ¶¶ 19-21, Dkt. #1). She alleges the actions of the City defendants "constitute negligent handling." (*Id.*, at ¶ 23). Her claim must be analyzed under basic negligence principles.[4]

The City defendants argue that they owe no duty to the plaintiff. Ms. Pearson argues that they have a duty to avoid the use of excessive force when arresting her. "A cause of action for negligence exists only if 'the defendant owes a duty of care to plaintiff.'" *Osborn v. Mason County*, 157 Wash.2d 18, 27 (2006), quoting *Chambers-Castanes v. King County*, 100 Wash.2d 275, 284 (1983). Thus, "a public entity has a duty of care when it owes a duty 'to the injured plaintiff' but does not have a duty of care when it owes a duty 'to the public in general.'" *Id.*, quoting *Babcock v. Mason County Fire Dist. No. 6*, 144 Wash. 2d 774, 785 (2001). Thus, while it is true that a municipality owes a general duty to all its citizens to avoid the use of excessive force when effectuating an arrest, it cannot be said that they owed Ms. Pearson a specific duty. Accordingly, the City defendants are entitled to summary judgment as to Ms. Pearson's negligence claim.[5]

**2.   42 U.S.C. §1983 claim.**

The City defendants argue that they are protected by the doctrine of qualified immunity from Ms. Pearson's claim that the force used to arrest her was excessive under the Fourth and Fourteenth Amendments to the U.S. Constitution.

Defendants in a §1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular officer. *Id.*, at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in this litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional

---

[4] She did not assert a claim for assault and battery which normally flows from these facts. Plaintiff's claim for assault and battery would be barred under the two-year statute of limitations applicable to such claims. RCW 4.16.100.

[5] Because the Court granted the City defendants' motion on a basic negligence theory, the Court will not address the City defendants' arguments that they are entitled to summary judgment under RCW 4.24.410 (dog handler immunity).

right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.,* at 202. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id*.

The first inquiry is whether (viewed in the light most favorable to the non-moving party) the facts show that the officers' conduct violated a constitutional right. *See, Brosseau v. Haugen*, 543 U.S. 194 (2004). In excessive force cases, the inquiry is whether the officers' conduct was objectively reasonable under the circumstances. *Id*.; *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor,* 490 U.S. 386, 397 (1989). To determine whether the force used was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.,* at 396. "The 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*.

In evaluating the nature and quality of the intrusion on plaintiff's Fourth Amendment interests, the Court must consider "the type and amount of force inflicted" on Ms. Pearson. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). Here, the force inflicted was a dog bite that caused Ms. Pearson's pain, resulted in stitches, and has left a scar. On its face, this intrusion appears to be modest, but not insignificant.

The Court must next balance the intrusion against the governmental interests at stake. In evaluating the government's interests, the Court considers such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S., at 396.

In this case the governmental interest began when Ms. Pearson escaped from Sgt. Schierhoff's custody and ran into the surrounding neighborhood. She was under arrest for DUI and felony eluding. Officers Davis and Sgt. Cronk were aware of the charges. They were also aware of her description and

that she was handcuffed. However, a true factual dispute arises over whether Ms. Pearson posed an immediate threat to the safety of the officers or others. The City defendants and Sgt. Schierhoff claim that she was hiding behind a bush against the foundation of the house. They all claim that the bush was large with foliage that extended to the ground. Officer Davis testified in deposition that after KG went down in the bush he heard screaming, he then saw legs kicking at the dog. (Sampson Decl., Exh. J, Deposition of Michael Davis, p. 16, Dkt. #39).

Ms. Pearson, however, argues in her opposition to the motion that the bush could not have concealed her based upon police photos taken at the scene. (Pearson's Memo. Opp., p. 4, Dkt. #38; Sampson Decl., Exh. B, Dkt. #39). She further argues that Officer Davis and Sgt. Cronk had flashlights and together with the ambient light in the yard, Ms. Pearson was readily visible. Therefore, the threat she posed was minimal. It is correct that when bitten by KG and when Sgt. Cronk went to pick her up, Ms. Pearson continued to actively resist by kicking at both KG and Sgt. Cronk.

Viewing the facts in the light most favorable to Ms. Pearson and realizing that the Court must consider the reasonableness of the force used from the perspective of a reasonable officer on the scene, this Court cannot say that, in balance, the officer's allowing KG to bite Ms. Pearson was a reasonable use of force. Therefore, Ms. Pearson has shown that her constitutional right to be free from the excessive use of force under the Fourth and Fourteenth Amendments was violated. That, however, does not end the inquiry.

Keeping in mind the specific facts of this case, the Court must next determine whether or not the constitutional right violated was clearly established and, if so, whether a reasonable officer could have known his conduct was unlawful. *See Saucier v. Katz, supra; Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Brosseau v. Haugen, supra*.[6] This case involves the application of clearly established principles on the use of force. The nature of the conduct for which Ms. Pearson was initially arrested (DUI, felony eluding) and the low level of threat she presented (handcuffed and lying next to a house) leads the Court to conclude that the use of a "bite and hold" police dog violated Ms. Pearson's clearly established right to be

---

[6]The facts of *Brosseau*- a suspect using a vehicle in a dangerous and threatening manner - are (or were, at the time) somewhat unique. Thus, the level of force authorized was not "clearly established" at the time of the acts in question there. The officer's use of deadly force was instead in the "hazy border between excessive and acceptable force." *Brosseau,* 543 U.S., at 201. This case does not involve a factual situation that is unique.

ORDER
Page - 8

free from the excessive use of force, and the officers reasonably should have known their actions were in violation of that right. Therefore the City defendants' motion for summary judgment as to Ms. Pearson's claim under 42 U.S.C. §1983 is **DENIED**.

## IV.  CONCLUSION

The State of Washington and Sgt. Schierhoff's Motion for Summary Judgment [Dkt. #30] is **GRANTED**. Officer Davis, Sgt. Cronk and the City of Bremerton's Motion for Summary Judgment [Dkt. #32] is **GRANTED** as to plaintiff's state law claims for outrage and negligence and is **DENIED** as to plaintiff's federal claim under 42 U.S.C. §1983.

**IT IS SO ORDERED.**

Dated this 17th day of October 2007.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE